## NATIONAL SURETY CO. v. SEAICH.

(Supreme Court Appellate Division, First Department. February 18, 1916.)

1. PAYMENT ⬤⟿51—JOINT AND SEVERAL LIABILITY—DISCHARGE.

Where a debt is joint and several, although one debtor may be released and the other held, if the debt is satisfied by either, nothing remains for either to pay.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 135; Dec. Dig. ⬤⟿51.]

2. GUARANTY ⬤⟿31—JOINT AND SEVERAL LIABILITY—"I."

Where the defendant, with five others, signed a contract of guaranty to the amount of $2,500, which contained the words, "I, the undersigned, do hereby gaurantee," and which was worded in the singular throughout, the obligation created was joint and several to the aggregate extent of $2,500 only.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 33, 34; Dec. Dig. ⬤⟿31.

For other definitions, see Words and Phrases, First and Second Series, I.]

3. GUARANTY ⬤⟿87—PLEADING AND PROOF—PARTIES TO INSTRUMENT.

Proof of a joint and several obligation, executed by the defendant and five others, did not support an allegation of a sole and individual guaranty executed by the defendant alone, and setting forth a copy of the instrument with all but defendant's name omitted therefrom.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 101; Dec. Dig. ⬤⟿87.]

4. GUARANTY ⬤⟿36—EXTENT OF LIABILITY.

A guarantor cannot be held beyond the express terms of his contract.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38–45; Dec. Dig. ⬤⟿36.]

5. PLEADING ⬤⟿237—AMENDMENT—TIME OF.

Where the plaintiff set forth in his pleadings a copy of a contract of guaranty which purported to be signed by the defendant alone, but at the trial, when offered in evidence, the original was signed by the defendant and five others, it was error not to allow the defendant to amend his answer, at the close of plaintiff's case, by setting up payment of the amount of the contract by one of the signers.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 603–619; Dec. Dig. ⬤⟿237; Contracts, Cent. Dig. § 1752.]

Smith, J., dissenting.

Appeal from Trial Term, New York County.

Action by the National Surety Company against William H. Seaich. From a judgment for the plaintiff, and from an order denying defendant's motion for new trial, the defendant appeals. Reversed, and new trial ordered.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and SMITH, JJ.

William J. Moran, of New York City, for appellant.
Milfred O. Garner, of New York City, for respondent.

DOWLING, J. The complaint herein set forth that on December 12, 1913, the Brightwood Motor Manufacturing Company, for a valuable consideration, made, executed, and delivered to the Farmers'

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Loan & Trust Company of New York its certain promissory note, whereby it promised to pay the latter on September 15, 1914, the sum of $125,000, with interest thereon at the rate of 6 per cent. per annum. It then contained the allegation:

"Fifth. Upon information and belief, that prior thereto, and on the 11th day of June, 1913, the defendant, William H. Seaich, for a valuable consideration to him paid, and in order to induce said Farmers' Loan & Trust Company of New York to accept said promissory note and advance money to Brightwood Motor Manufacturing Company thereon, made, executed, and delivered to the Farmers' Loan & Trust Company of New York an agreement in writing, dated June 11, 1913, and signed by said defendant, a copy of which agreement is hereto annexed, marked 'Exhibit A' and made a part hereof, wherein and whereby the said defendant guaranteed to said Farmers' Loan & Trust Company of New York, to the extent of $2,500, the punctual payment at maturity of the said note for $125,000 given by said Brightwood Motor Manufacturing Company to said Farmers' Loan & Trust Company of New York, with interest thereon at the rate of 6 per cent. per annum from the date of said note, to wit, the 12th day of December, 1913, and therein waived presentment for payment, notice of presentment and nonpayment, protest, and notice of protest of said note."

Exhibit A, annexed to the complaint, is pleaded as follows:

"In consideration of the loan by the Farmers' Loan & Trust Company of New York to the Brightwood Motor Manufacturing Company, a corporation organized and existing under the laws of the state of New York, the manu-facturers of the Orson automobile, and in further consideration of one dollar ($1.00) to me in hand paid by the said Farmers' Loan & Trust Company of New York, and other good and valuable considerations, the receipt whereof is hereby acknowledged, I, the undersigned, do hereby guarantee to the said Farmers' Loan & Trust Company of New York to the extent of twenty-five hundred dollars ($2,500), the punctual payment at maturity of a certain prom-issory note, dated December 12, 1913, for the principal sum of one hundred and twenty-five thousand dollars ($125,000), with interest at the rate of 6 per cent. per annum, to be made, executed, and delivered by the said Brightwood Motor Manufacturing Company to the said Farmers' Loan & Trust Company of New York, together with all legal and other expenses of collection, and I hereby expressly waive presentment for payment, notice of presentment and of nonpayment, protest, and notice of protest of said note, and consent that the time for the payment thereof may be extended without notice or of further consent from me.

"Dated New York, June 11, 1913.        [Signed]    Wm. H. Seaich."

It was further averred that the Trust Company accepted the note of the Manufacturing Company and advanced money thereupon in reliance upon the said guaranty of defendant; that when the note became payable it was duly presented for payment, which was refused, and that there is still due thereon a sum exceeding $7,500, no part of which has been paid to said Trust Company, or to plaintiff, its assignee; that notice of the failure to pay said note was duly given to defendant, and demand made upon him "for payment of the said sum of $2,500, according to the agreement of the said defendant, above mentioned," but no part thereof has been paid; that the Trust Company has duly assigned its cause of action against defendant to the plaintiff.

The answer of the defendant, among other things, denied the allegations of paragraph "Fifth" of the complaint heretofore quoted. Upon the trial plaintiff produced and offered in evidence the instrument upon which it relied to establish its cause of action. While the body

of the paper was the same as that pleaded, it was not signed by
William H. Seaich alone, but by six individuals in the following order:
H. R. Winthrop, Charles G. Smith, E. Townsend Erwin, William H.
Seaich, A. W. Krech, and Lyman Rhodes. Defendant objected to its
receipt as incompetent, immaterial, and irrelevant, under the plead-
ings; but he was overruled and excepted. Plaintiff offered proof that
the Manufacturing Company's note had been paid in part, and that
at the time of the assignment to plaintiff $7,500 remained unpaid there-
on, "represented by three unpaid guarantors." Plaintiff asked of one
witness, "Will you please state the circumstances under which he
[defendant] signed it?" (the paper in question), but upon defendant's
objection the court said:

"What difference does that make? He signed it. It speaks for itself."

And the question was not pressed. It was also proven that $2,500
had been paid on the agreement in question by Roger R. Winthrop,
but whether he is the same person whose name appears on the paper
as H. R. Winthrop does not appear.

[1] At the close of plaintiff's case defendant's counsel moved to
dismiss on the ground that the cause of action alleged had not been
proven, and when that motion was denied, sought to amend his an-
swer by setting up payment of the amount secured to be paid under the
agreement, and further that the amount secured to be paid thereunder
by any or all of the six persons who executed the same did not ex-
ceed the sum of $2,500, and that that sum had been paid before the
commencement of the action and the assignment of the claim. In view
of the discrepancy between the pleadings and the proof (of which the
plaintiff must have been aware, since it set forth a copy of the agree-
ment from which five signatures had been omitted), the objection to
the amendment was peculiar. As stated by plaintiff's counsel, it was
that:

"An amendment like that would necessitate an entirely different theory of
presenting the case, and I think that it should be denied. Ordinarily I do
not object to amending in an immaterial respect, but it seems to me that it
goes right to the very gist of the whole case, and we came here prepared to
show that he signed an individual guaranty, and we are now asked to go into
the whole matter again, and to show that he was with a number of guar-
antors, which would necessitate bringing people from the Farmers' Loan &
Trust Company."

The court denied the motion, whereupon defendant rested and again
moved for a dismissal, which was denied, and a verdict directed in
favor of plaintiff. This we believe was error. The complaint was
based upon the theory of an individual guaranty signed by defendant
alone. The proof disclosed that he was but one of six guarantors, and
was not the first signer, but the fourth. The use of the word "I"
throughout the document did not establish its legal effect as the indi-
vidual guaranty of the defendant. On the contrary, upon the face of
the paper and without any testimony to qualify or explain it, it was
the joint and several obligation of the six signers. The rule is that
when the word "I" is used in the body of an instrument signed by two
or more, without anything else to indicate the nature of the liability

intended sought to be created, the signers are liable jointly and severally for the entire amount of the obligation. So in Coonley v. Wood, 36 Hun, 559, a promissory note was in the following form:

"$80.                                                     Altona, Oct. 18, 1878.
     "For value received, I promise to pay Baker & Wood eighty dollars at Altona express office, with use, January 1, 1880.          E. W. Wood.
                                                          "Smith Wood."

It was held that this note was joint and several. A judgment having been obtained by the payee against both makers, although after service on one only, and one of the makers having turned over to the judgment creditors a mare in satisfaction of the judgment against him, with an agreement that it should be sold and the proceeds applied upon the note, and the judgment satisfied pro tanto as to the other maker, it was held that the judgment was satisfied the instant the mare was transferred, and no further liability remained against either maker; for where a debt is joint and several, one debtor may be released and the other held, but, if the debt is satisfied by either, nothing remains for either to pay. Upon the question of the effect of satisfaction by one of two bound jointly and severally, this case was cited with approval in American Guild v. Damon, 186 N. Y. 366, 78 N. E. 1081. In Ely v. Clute, 19 Hun, 35, the note sued on was in the following form:

"$270.                                                   Stockton, March 14, 1875.
     "One day after date I promise to pay Lorenzo Ely, or bearer, two hundred and seventy dollars at the post office in Stockton. Value received, with use.
                                                          "Thomas W. Clute.
                                                          "J. B. Clute." ·

It was held that:

     "A note, 'I promise to pay,' etc. and signed by two persons, is in law a joint and several note. Edwards on Bills and Notes, 682; Hemmenway v. Stone, 7 Mass. 58 [5 Am. Dec. 27]; Marsh v. Ward, Peake's Rep. 130."

In Partridge v. Colby, 19 Barb. 248, the note was as follows:

     "For value received, I promise to pay C. W. Nason, or bearer, sixty-five dollars, in six months from date, and use, at my house.
                                                          "[Signed]   W. Colby.
                                                          "Charles W. Nason."

Nason offered on the trial to prove that he had received the note signed by Colby only, and had subsequently signed his name thereto and delivered it to plaintiff in part payment for a horse. It was held that, as to the bearer of the note, he was a joint and several contractor with Colby. In Brownell v. Winnie, 29 N. Y. 400, 86 Am. Dec. 314, this case was cited and approved.

That a note reading "I promise to pay," but signed by two or more, is the joint and several obligation of the signers, is laid down in Story on Promissory Notes (6th Ed.) §§ 58, 59; Daniel on Negotiable Instruments (6th Ed.) § 94, citing cases from other jurisdictions; 7 Cyc. 656. It is now the settled law of this state under the Negotiable Instruments Law (chapter 43, Laws 1909; Consol. Laws, c. 38), whereof section 36, subd. 7, provides:

"Where an instrument containing the words 'I promise to pay' is signed by two or more persons, they are deemed to be jointly and severally liable thereon."

The rule is the same when applied to the construction contracts in general, including those of guaranty or suretyship. In Parsons on Contracts (9th Ed.) vol. 1, p. 11, it is said that:

"Wherever an obligation is undertaken by two or more, or a right given to two or more, it is the general presumption of law that it is a joint obligation or right. Words of express joinder are not necessary for this purpose; but, on the other hand, there should be words of severance, in order to produce a several responsibility or a several right."

The footnote then states that:

"If an instrument, worded in the singular, is executed by several, the obligation is a joint and several one; and those who thus execute it may be sued either separately or together"—citing cases.

Guaranties are governed in their construction by the same rules which apply to other contracts. Evansville National Bank v. Kaufmann, 93 N. Y. 273, 45 Am. Rep. 204. In Van Alstyne v. Van Slyck, 10 Barb. 383, the obligation sued on read:

"In consideration of one dollar in hand, to me paid by Martin M. Garner, I hereby covenant and agree to become surety for the faithful performance of said Garner's covenants as expressed in the above said lease. Sealed with my seal, and dated this 3d day of April, 1845.
                              "John P. Van Slyck   [L. S.]
                              "Christopher H. Garner.

"Witness: S. V. Cady."

It was held that the obligation of the defendants Van Slyck and Garner was clearly a joint and several one. This case is regarded as a leading one upon the question, and was cited by the referee in his report, approved by the court and printed with the decision in State Bank of Pike v. Brown et al., 96 App. Div. 441, 89 N. Y. Supp. 381, affirmed 184 N. Y. 517, 76 N. E. 1109. The bond in that case read:

"Know all men by these presents, that I, Earle S. White, * * * Henry K. White, * * * W. O. Leland, * * * S. N. Wood, and George M. Brown * * * am held and firmly bound unto the state Bank of Pike, N. Y., in the sum of twenty thousand dollars, * * * for which payment I bind myself, my heirs, executors, and administrators."

Defendants pleaded that this was on a joint bond. The referee said:

"If the words are 'I promise to pay,' and there are many promisors, it is the several promise of each and the joint promise of all [citing Van Alstyne v. Van Slyck, Partridge v. Colby, and Ely v. Clute, supra]. The bond in question, then, was the several bond of each and the joint bond of all, i. e., a joint and several obligation, and the plaintiff can maintain an action thereon against all the makers jointly or against one or more of them severally." 96 App. Div. 448.

In Stearns on Suretyship (2d Ed.) p. 92, it is said, speaking of the contract of guaranty:

"Where the form of the contract is singular, but executed by two or more persons, it expresses the intent of the obligors in the majority of cases to hold such promise to be joint and several, and such is the rule."

Plaintiff's theory of the instrument in question was, and is, that it is the several obligation of each signer guaranteeing, to the extent of $2,500, the punctual payment at maturity of the note of $125,000. Upon that theory its complaint was based. It now claims, further, that if it be construed as a joint and several obligation, each signer guaranteed the payment of the note for $125,000, but only to the extent individually of $2,500. Neither of these contentions is tenable.

[2] Applying the doctrine laid down by the foregoing authorities, the paper in question was the joint and several obligation of the six signers to the aggregate extent of $2,500 only, in case default was made in the payment of the $125,000 note. Plaintiff had no right to plead it as the individual and sole obligation of the defendant to pay $2,500, nor to set it up in a mutilated form and without the other signatures thereto. It could have sued defendant alone, but only on setting up the paper actually signed by him, to which he could interpose any defense available to him as one jointly and severally bound, including payment by a joint obligor. The paper received in evidence was not the one sued on, and the theory of defendant's liability upon which the action proceeded was incorrect.

[3] The proof of a joint and several obligation for $2,500, executed by six persons, did not support, and was not within, the pleading of a sole and individual guaranty executed by one alone. There was no reformation sought of the instrument, nor any proof of surrounding circumstances or agreements to give it a meaning other than appeared upon its face. The learned trial court in its opinion said:

"By its express terms each subscriber thereof, for a good and valuable consideration, guaranteed to the extent of $2,500 the punctual payment at maturity of a certain promissory note for $125,000."

[4] The word "each" does not appear in the instrument and cannot be imported therein. The guarantor cannot be held beyond the precise terms of this contract. Evansville National Bank v. Kaufmann, 93 N. Y. 281, 45 Am. Rep. 204. By pleading the instrument incorrectly, plaintiff escaped the test before a trial of its legal effect, and at the same time avoided the admission that the sum of $2,500 had been paid on this obligation by one of the other signers.

[5] Error, therefore, was committed in receiving in evidence, after objection, a document essentially different in its tenor and legal effect from the one referred to in the complaint and set forth at length as a part thereof. With this exhibit out, there is not sufficient evidence to support plaintiff's cause of action. He cannot recover upon a cause of action not pleaded, when objection is made. Brown v. Wolfe, 119 App. Div. 777, 104 N. Y. Supp. 573. It appears on the cross-examination of the witness Kilborn that $2,500 has been paid on this agreement by Roger R. Winthrop, but it does not appear that he is the person whose name appears as a signer as H. R. Winthrop. If he was the same person, defendant should have been allowed to set up payment of $2,500 on this agreement by one of the signers as a defense, particularly in view of the misleading form of the complaint. Under the authorities, payment of the $2,500 in question would have operated as a discharge of all the signers, their obligation being joint

and several. American Guild v. Damon, 186 N. Y. 365, 78 N. E. 1081. It is quite apparent that both parties will require an amendment of their pleadings before the main issue can be properly disposed of.

The judgment and order appealed from will be reversed, and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. SMITH, J., dissents.